IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOUIS VILLALBA,

    Petitioner,                      No. CIV S-04-2608 WBS DAD P

    vs.

MIKE KNOWLES, et al.,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

/

         Petitioner is a state prisoner, proceeding pro se, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted in 1991 on charges of second degree murder and sentenced to nineteen years-to-life in state prison with the possibility of parole in the Orange County Superior Court. In the petition now pending before this court, petitioner alleges that the March 13, 2002 decision of the California Board of Parole Terms (hereinafter the "Board")[1] to deny him parole at his first parole hearing, violated California law and his due process rights under the Fourteenth Amendment to the United States Constitution. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

---

[1] California has since replaced the Board of Prison Terms with the Board of Parole Hearings. See Cal. Penal Code § 5075(a).

1

PROCEDURAL AND FACTUAL BACKGROUND

Petitioner was deemed unsuitable for parole by the Board following a March 13, 2002 initial parole consideration hearing.  Petitioner's administrative appeal from the adverse determination was denied on February 11, 2003.  Resp't's Ex. 4 at 1:19-21.[2]

In rendering its March 13, 2002 decision, the Board relied on the following reasons for denying petitioner parole:

> The Panel has reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at this time.  Number one is the committing offense.  The offense was carried out in an especially cruel and callous manner.  The offense was carried out in a dispassionate, calculated manner...the offense was carried out in a manner, which demonstrates an exceptionally callous disregard for human suffering.  The motive for the crime was inexplicable or very trivial in relationship to the offense.  These conclusions are drawn from the Statement of Facts wherein the prisoner was arguing with his wife.  He was hitting his wife and then the three men [including Mr. Brown and Mr. Carpenter] yelled at [petitioner] from across the street to stop hitting his wife, Christine.  The [petitioner] told them to mind their own business and ran off.

\* \* \*

> [S]he [Christine] proceeded to go with [Mr. Brown and Mr Carpenter] to a liquor store and then back to Mr. Brown's apartment.

\* \* \*

> Later Mr. Brown and Mr. Carpenter argued in Brown's apartment.  Brown left the apartment.  They went down the stairway.  The [petitioner] appeared with a shotgun and a second man appeared, a Mr. Owens who was carrying a baseball bat and was with the [petitioner].  The [petitioner] ordered the other men to stand by the fence.  The [petitioner] shot the victim and killed him.

> Let's see, the previous record, the [petitioner] has an escalating pattern of criminal conduct in terms of petty theft.  He was on probation in '77 for that as well as a burglary charge in '79.  The

---

[2] Petitioner does not contest that he received notice of his 2002 parole hearing, appeared at the hearing, and received a copy of the Board's decision finding him unsuitable for parole.

| | |
|---|---|
| 1 | prisoner has a history of unstable tumultuous relationships with others in terms of substance abuse, marijuana around 14, 13 or 14 and then later on PCP.  He's failed previous grants of probation and cannot be counted upon to avoid criminality.  He failed to profit from society's previous attempts to correct his criminality.  Such attempts included probation, as mentioned, a drug diversion program, and a group home. |

        prisoner has a history of unstable tumultuous relationships with others in terms of substance abuse, marijuana around 14, 13 or 14 and then later on PCP.  He's failed previous grants of probation and cannot be counted upon to avoid criminality.  He failed to profit from society's previous attempts to correct his criminality.  Such attempts included probation, as mentioned, a drug diversion program, and a group home.

        Institutional behavior, the prisoner has programmed in a limited manner while incarcerated.  He's not sufficiently participated in beneficial self-help and therapy programs at this time.

        Parole plans, the prisoner has viable parole plans at this time.

        3042 Notices, the Hearing Panel notes that responses to PC 3042 Notices indicate an opposition to a finding of parole suitability specifically [sic] two different entities.  One, the District Attorney's office of Orange County who had a representative present and was here in opposition to a finding of suitability at this time as well as the Buena Vista [sic] PD, the police department, which was the law enforcement agency which investigated the particular case . . . as well as the victim's next of kin who was present as well today in opposition to a finding of suitability at this time.

        Now remarks to the prisoner, the Panel makes the following findings: That the prisoner needs therapy in order to face, discuss, understand, and cope with stress in a nondestructive manner to better acquaint himself with the causative factors as well as his culpability in this particular crime.  Until progress is made the prisoner continues to be unpredictable and a threat to others . . . Nevertheless, you should be commended, sir, for remaining disciplinary free since incarceration . . . Although these positive aspects of your behavior don't outweigh your unsuitability at this time.  This is a three-year denial, sir.

Resp't's Ex. 2 at 70-71, 9 and 71-73.

        Petitioner filed a habeas petition in the Orange County Superior Court, which was denied in a reasoned decision on June 23, 2003.  Petitioner filed subsequent habeas petitions in the California Court of Appeals and the California Supreme Court, both of which were

/////

/////

/////

/////

3

summarily denied.[3]  Answer at 3.  Petitioner's federal habeas petition was received for filing by this court on December 8, 2004.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

/////

---

[3] Respondent contends that petitioner failed to exhaust his federal claims in state court because the copy of the petition obtained by respondent from the California Supreme Court reflected only references to attachments and not the attachments themselves.  Answer at 14.  Respondent contends that the California Supreme Court could not have considered petitioner's federal claims because he merely referred that court to attachments that he did not provide to the court.  <u>Id.</u>  Respondent's argument assumes that because the California Supreme Court did not send respondent the attachments to the petition filed in that court that petitioner must not have filed any with the Supreme Court.  However, respondent did not verify that petitioner failed to submit the attachments to the Supreme Court or that the court did not receive them.  It may be that when respondent requested a copy of the petition, the Supreme Court elected to to forward the attachments.  In any event, whether the claims are exhausted or unexhausted, for the reasons set forth below this court will recommend that the petition be denied.  See 28 U.S.C. § 2254(b)(2) (providing that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claims

Petitioner presents the following four arguments[4] in challenging the Board's March 23, 2002 decision finding him unsuitable for parole: (1) that the Board failed to follow

/////

---

[4] Petitioner makes brief mention of "a violation of the California and United States Constitution prohibiting cruel and unusual punishment" in the introduction section of his petition. Pet. at 1. However, petitioner fails to articulate the basis for such a claim anywhere in the petition itself. Therefore, this claim has not been considered by the court.

1  California law at his parole hearing and thereby violated his constitutional right to due process[5]

2  (Pet. at 9-24); (2) his constitutional right to due process was violated because there is no

3  evidence in the record to support a finding of unsuitability for parole in his case (Pet. at 24-36);

4  (3) he meets the criteria tending to show suitability for parole under California law (Pet. at 36-

5  40); and (4) under California law the Board was required to hold an extended term hearing in his

6  case. Petitioner raised claims 1, 2, and 4 in his habeas petition filed with the Orange County

7  Superior Court and they were rejected by that court in a reasoned opinion. For the reasons

8  explained below, the decision of the state courts in rejecting petitioner's first and second claims

9  is not contrary to, or an unreasonable application of, federal law and petitioner's third and fourth

10 claims must be dismissed for failure to present a cognizable claim in this federal habeas action.

   A.  Due Process Violations - Claims 1 and 2

12           In his first two claims petitioner alleges that the Board's failure to follow its own

13 regulations at his parole hearing and the lack of evidence to support a finding of unsuitability for

14 parole violated his liberty interest in parole protected by the Due Process Clause.

15           The Due Process Clause of the Fourteenth Amendment prohibits state action that

16 deprives a person of life, liberty, or property without due process of law. One alleging a due

17 process violation must first demonstrate that he was deprived of a liberty or property interest

---

[5] Petitioner also makes brief mention of an equal protection claim in the introduction to his habeas petition pending before the court. (Pet. at 1.) However, two later references to such a claim conflate two different concepts, both erroneous. First, denying petitioner parole after eleven years of confinement did not extend his criminal sentence, and therefore was not a denial of equal protection, because petitioner was sentenced to nineteen years-to-life in state prison. (Id. at 18.) Nineteen years, therefore, is the minimum sentence, not eleven years. Second, petitioner's lengthy comparison of his own crime to those of other parolees in an attempt to establish that the Board should have given him a parole date, is misplaced. (Id. at 22.) Under California law, the Board is not to engage in a comparative analysis of the period of confinement being served by other inmates for similar crimes. In re Lawrence, 44 Cal. 4th 1181, 1217, 1221 (2008); In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005). Rather, the parole suitability determination is to be individualized and is to focus upon the public safety risk currently posed by the particular offender. (Id.). Therefore, petitioner was not denied equal protection when the Board focused solely on the public safety risk posed by his release rather than comparing his crime to those of other inmates who had been released on parole.

1  protected by the Due Process Clause and then show that the procedures attendant upon the
2  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,
3  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).
4  　　　　　A protected liberty interest may arise from either the Due Process Clause of the
5  United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).
6  The United States Constitution does not, of its own force, create a protected liberty interest in a
7  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).
8  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that
9  parole release will be granted' when or unless certain designated findings are made, and thereby
10 gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz
11 v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a
12 cognizable liberty interest in release on parole, even for prisoners who have not already been
13 granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);
14 Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re
15 Lawrence, 44  Cal. 4th at 1204, 1210, 1221.  Accordingly, this court must examine whether the
16 deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and
17 therefore violated due process.
18 　　　　　Because "parole-related decisions are not part of the criminal prosecution, the full
19 panoply of rights due a defendant in such a proceeding is not constitutionally mandated."
20 Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and
21 citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due
22 process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded
23 notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the
24 reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.
25 Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving
26 /////

parole issues). Violation of state mandated procedures will constitute a due process violation only if the violation causes a fundamentally unfair result. Estelle, 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability. Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402. The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision." McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S. 445, 456 (1985)). See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)). For purposes of AEDPA, Hill's "some evidence" standard is "clearly established" federal law. Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456). "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some indicia of reliability." Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

In a habeas action where a federal court is called upon to assess whether a state parole board's suitability determination was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007) Therefore, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in

/////

> [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

Id.

In California, the overriding concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005). This "core determination of 'public safety' . . . involves an assessment of an inmates current dangerousness." In re Lawrence, 44 Cal. 4th at 1205 (emphasis in original). Accordingly,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

In re Lawrence, 44 Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002); In re Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).[6]

In recent years the Ninth Circuit Court of Appeals has been called upon to address the issues raised by petitions such as that now pending before this court in three significant cases, each of which will be discussed below. First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor such as the circumstances of the offense could at some point result in a due process violation.[7] While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and

---

[6] Under California law, the Board is not to engage in a comparative analysis of the period of confinement being served by other inmates for similar crimes. In re Lawrence, 44 Cal. 4th 1181, 1217, 1221 (2008); In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005). Rather, the suitability determination is to be individualized and is to focus upon the public safety risk currently posed by the particular offender. (Id.)

[7] That holding has been acknowledged as representing the law of the circuit. Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006).

9

suffering of another; and (3) petitioner could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

Id. at 916. The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Citing Biggs, the petitioner in Sass contended that reliance on these unchanging factors violated due process. The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination. Id. at 1129. The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id. The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were

/////

>   neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

Id.

In <u>Irons</u> the Ninth Circuit sought to harmonize the holdings in <u>Biggs</u> and <u>Sass</u>, stating as follows:

>   Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in <u>Sass</u> precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.
>
>   We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
>   Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. <u>Biggs</u>, 334 F.3d at 917.

<u>Irons</u>, 505 F.3d at 853-54.[8]

---

[8] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. <u>In re Lawrence</u>, 44 Cal. 4th at 1218-20 & n.20.

11

After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and Irons[9], and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's March 13, 2002 decision denying him parole.

First, and perhaps most importantly in light of current Ninth Circuit authority, at the time of the challenged parole suitability hearing, petitioner had not yet served the minimum number of years required under his nineteen years-to-life sentence. Pursuant to the holding in Irons, petitioner's right to due process was not violated when he was deemed unsuitable for parole prior to the expiration of his minimum term. Irons, 505 F.3d at 665. Further, the Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "indicia of reliability." Jancsek, 833 F.2d at 1390. A review of the record reflects that the Board relied in large part on the circumstances of petitioner's offense of conviction; his escalating pattern of criminal conduct, his unstable personal relationships, his history of substance abuse; his failed rehabilitation efforts through probation, drug diversion, and a group home; and his limited programming in self help and therapy while incarcerated.[10] According to the cases cited above, these cited factors constitute "some evidence" supporting the Board's decision to deny parole where petitioner has

/////

---

[9] Even more recently a panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

[10] As noted above, the Board also relied on evidence that the Orange County District Attorney, the Buena Vista Police Department, and the victim's next of kin opposed a finding of suitability. However, under Hill, the district attorney's opinion, without more, cannot be considered "some evidence" supporting the Board's decision. Rosenkrantz v. Marshall, 444 F. Supp.2d 1063, 1080 n.14 (C.D. Cal. 2006).

not served the minimum term required by his sentence. Sass, 469 F.3d at 1129; Irons, 505 F.3d at 665.

The Board's 2002 decision that petitioner was unsuitable for parole and would pose a danger to society if released at that time meets the minimally stringent test set forth in Biggs, Sass, and Irons. This case has not yet reached the point where a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole has resulted in a due process violation. Moreover, other factors found to be present supported the Board's decision. Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to find him suitable for parole at the March 13, 2002 hearing violated his right to due process. See Sass, 461 F.3d at 1129; Irons, 505 F.3d at 664-65.

B. State Law Claims in 3 and 4

Petitioner also presents two state law claims in his federal petition. In this regard he argues that he meets the circumstances tending to show suitability for parole and that the Board was required to hold an extended term hearing. For purposes of this federal habeas corpus action, petitioner has cited no federal authority in support of these claims brought under state law. In short, petitioner's arguments that the state courts have erred in applying state law in determining his release on parole are not cognizable in this federal habeas corpus proceeding. See Estelle, 502 U.S. at 67-68; Park, 202 F.3d at 1149; Middleton, 768 F.2d at 1085; see also Milton, 407 U.S. at 377.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED: February 17, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
villalba2608.hc